**Robert W. JOHNSON, Plaintiff,**

v.

**PHILADELPHIA ELECTRIC COMPANY, Defendant.**

**Civ. A. No. 88–0085.**

United States District Court, E.D. Pennsylvania.

March 16, 1989.

---

Sheldon Tabb, Abrams, Abramson & Tabb, Elkins Park, Pa., for Robert W. Johnson.

Hope Comisky, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for Philadelphia Elec. Co.

## FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW AND FINAL JUDGMENT

HUTTON, District Judge.

Before this Court is plaintiff's cause of action under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 of the Civil Rights Act of 1866. Plaintiff filed this action January 7, 1988, alleging race discrimination in the promotion of Daniel Nelson, a white male, instead of plaintiff to the position of assistant building supervisor. Plaintiff's claims were adjudicated by non-jury trial.

After due consideration, and in accordance with Fed.R.Civ.Pro. 52(a), this Court makes the following:

## I. FINDINGS OF FACT

1. Plaintiff, Robert W. Johnson, is a black male. Plaintiff was born March 21, 1938 and is 50 years of age. Plaintiff is employed by defendant, Philadelphia Electric Company ("PECO"). Plaintiff commenced employment with defendant on March 21, 1967. Plaintiff attended Benjamin Franklin High School to the eleventh grade. Thereafter, plaintiff entered the U.S. Army and earned his high school equivalency degree. On his own initiative plaintiff received additional education in the form of a correspondence course as a locksmith and a Bell & Howell Institute correspondence course in electronics.

Plaintiff was promoted to the position of senior service mechanic in 1978. As a senior service mechanic, plaintiff's responsibilities included the operation of the heating, ventilating and air-conditioning systems at defendant's main office building located at 2301 Market Street, Philadelphia, Pennsylvania.

As of December, 1985, plaintiff was the senior service mechanic with the second highest seniority. Having been promoted to the position of senior service mechanic in 1977, Tharnell McLeod, a black male, was first in seniority and experience as of December, 1985. Plaintiff had been evaluated in 1983 by John Kirch, Assistant Building Supervisor, as "a good, dependable employee and an asset to our operating force." Further, plaintiff was evaluated in 1984 by Assistant Building Supervisor Joseph Ceraso as "a good, dependable employee whose job performance is satisfactory." Plaintiff was rated "satisfactory" in 1985 and 1986.

Neither plaintiff nor Tharnell McLeod were offered the position of assistant building supervisor. Daniel Nelson, a senior service mechanic appointed in 1984, was promoted to the position of assistant building supervisor in April of 1986. As a result, plaintiff suffered emotional depression which required psychiatric consultations in or about June of 1986 at a cost of $500. Further, plaintiff was so humiliated that he requested and received a transfer to a lesser position as an electrical mechanic helper at a substation.

2. Tharnell McLeod ("McLeod") is a black male born January 1, 1944. He is employed by defendant as a senior service mechanic. He began his employment as a janitor in 1966.

In his initial position, McLeod supervised eight to ten men. Within a year he was promoted to the position of building mechanic at defendant's Oregon Shop location. McLeod was promoted to service mechanic in 1971. In 1977, McLeod was promoted to the position of senior service mechanic.

Tharnell McLeod completed a two year course at Dobbins Technical High School in electrical technology in 1969. In 1982, he received an associate degree in business from the Community College of Philadelphia.

Daniel Nelson was supervised by Tharnell McLeod when assigned to the weekend shift. As of December, 1985, Tharnell McLeod was the senior service mechanic with the greatest seniority. Tharnell McLeod was not offered the position of assistant building supervisor.

3. Daniel Nelson ("Nelson") is a white male. Nelson began employment with the defendant on December 18, 1967, as a building attendant. Nelson has a high school diploma.

Nelson was promoted to service mechanic helper in 1977. As a service mechanic helper Nelson trained under plaintiff on the week-ends for about two years. Plaintiff was a senior service mechanic when Daniel Nelson was a junior helper. On certain occasions Daniel Nelson was supervised and trained by plaintiff. Nelson was not promoted to the position of senior service mechanic until June 28, 1984.

4. Joseph Ceraso, a white male, began employment with defendant on November 1, 1965 as a building attendant. His duties included janitorial services at the 2301 Market Building. After three and a half years he was promoted to the position of an assistant building mechanic. Joseph Ceraso was promoted to the position of service mechanic in 1971. Joseph Ceraso has a high school diploma.

Joseph Ceraso was promoted to senior service mechanic in 1977 and assistant building supervisor in 1983. Seniority in position was a factor in qualifying for both promotions. Joseph Ceraso was promoted to the position of building supervisor in December of 1985. The 1985 promotion of Ceraso to building supervisor made available the position of assistant building supervisor at defendant's main office building located at 2301 Market Street, Philadelphia, Pennsylvania.

5. Eugene Shoosmith, a white male, is the general superintendent of the department of building management and has the exclusive authority to promote an employee to the position of assistant building supervisor. Eugene Shoosmith subjectively determined that both plaintiff and McLeod were qualified, but not the "best qualified" for the position of assistant building supervisor. Shoosmith chose Daniel Nelson.

Eugene Shoosmith arbitrarily determined when and if seniority or a written evaluation of employee candidates was the necessary prerequisite for promotion. There existed no personnel policy requiring a written evaluation of an employee or directing promotion of the "best qualified" employee.

6. Available supervisory positions were not posted by defendant. Job descriptions were not made available to the employees of the defendant. Non-entry level opportunities for promotion were not posted by any of the departments of defendant. There is no written standard or policy which defines an objective criteria to be applied in the selection of the "best qualified" employee for promotion in the building department of the defendant company. No written examinations are available for employees to qualify competitively for these promotions.

## II. DISCUSSION

### A.

In order to prevail, plaintiff, Robert W. Johnson, must prove intentional discrimination by a preponderance of the evidence. *Texas Department of Community Affairs*

*v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The requirements under Title VII and § 1981 are essentially the same. *Hankins v. Temple University,* 829 F.2d 437 (3rd Cir.1987). Plaintiff has the burden of proving a prima facie case of discrimination.[1] To establish a prima facie case, plaintiff must prove: (1) that he is a member of a racial minority; (2) that a position was available and he was qualified for the job; (3) he was rejected for the position; and (4) the position was later given to a non-minority.[2] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). Once proven, defendant, Philadelphia Electric Company, is then required to articulate a legitimate, non-discriminatory reason for its actions. Finally, if defendant articulates a non-discriminatory reason, plaintiff must prove that the reason is a mere pretext for intentional race discrimination. *Bellissimo v. Westinghouse Electric Corp.,* 764 F.2d 175, 179 (3rd Cir.1985), *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986). At all points during trial, plaintiff retains the burden of proving that he would have received the position but for his race. *Lewis v. University of Pittsburgh,* 725 F.2d 910, 915–16 (3rd Cir. 1983), *cert. denied,* 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984). This may be proved by direct or indirect evidence. *Id.*

### B.

■ Philadelphia Electric Company concedes that Johnson has satisfied three elements of his prima facie case. However, defendant contends that plaintiff does not complete his prima facie case in that he fails to prove that he is qualified and able to perform the job of assistant building supervisor. This Court disagrees.

The record supports a finding that plaintiff was qualified for the position that was assumed by Daniel Nelson. Firstly, defendant's witness, Eugene Shoosmith, testified that plaintiff was qualified. Defendant's exhibits state that plaintiff was qualified. The fact that plaintiff's name was considered along with other specific employees as candidates for the position establishes that plaintiff was qualified for the job.

Additionally, several others previously promoted to the position of assistant building supervisor had come from the ranks of senior service mechanics. Daniel Nelson and Joseph Ceraso had been senior service mechanics. Daniel Nelson and Joseph Ceraso did not receive any other training for the position of assistant building supervisor. Daniel Nelson and Joseph Ceraso received on-the-job training for the assistant supervisor position after they were promoted. Thus, this Court must conclude that plaintiff has demonstrated that he was qualified for the position of assistant building supervisor. Therefore, plaintiff has established a prima facie case of race discrimination in defendant's employee promotion practices. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

### C.

■ Defendant must establish a legitimate non-discriminatory reason for its decision to promote Daniel Nelson rather than the plaintiff. *See, Texas Dept. v. Burdine,* 450 U.S. at 254, 255, 101 S.Ct. at 1094. Defendant contends that the defendant's promotion of Daniel Nelson was purely a business decision. Defendant argues that Daniel Nelson was the "best qualified" candidate for the job. To sup-

---

**1.** A prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Texas v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed. 2d 957 (1978).

**2.** [T]his standard is not inflexible, as [t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect in differing factual situations. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

port this contention, defendant relies on the testimony of Eugene Shoosmith, General Superintendent of Building Management. Eugene Shoosmith stated that it has always been the standard for promotion to supervisory levels such as assistant building supervisor to promote the "best qualified" candidate.

However, plaintiff contends that the reasons given by defendant are merely pretextual. Pretext may be proven either directly by persuading the fact-finder that a discriminatory reason more likely motivated the defendant or indirectly by showing that the proffered explanation is unworthy of belief. *Texas v. Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

Defendant's primary contention is that plaintiff, although qualified for the Nelson position, was not the "best qualified" for the job. Eugene Shoosmith states that "when a vacancy occurs or a new position is to be filled, we look over the performance evaluation of those that could be considered for promotion and select who is the best qualified to fill the job." He also testified that as long as he has been in building management, some twenty years, the best qualified standard has been applied. And, he has personally always selected the "best qualified" person for the job.

However, one is left with the strong impression that the entire evaluation process was little more than window dressing. It is very clear that defendant relies heavily on the illusive "best qualified" standard to justify the selection of Nelson. It is well noted that when an evaluation is based on solely subjective impressions and the evaluators are not themselves of the protected class, "the legitimacy and non-discriminatory basis of the articulated reason for the decision may be subject to particularly close scrutiny." *Page v. Bolger*, 645 F.2d 227, 230 (4th Cir.1981), (en banc), *cert. denied*, 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed. 2d 206 (1981); *Bennett v. Veterans Admin. Med. Ctr., et al.*, C.A. No. 87–7482, 1988 WL 14185 (1988) (VanArtsdalen, S.J.).

Plaintiff and McLeod, on their own initiative, had taken additional courses in order to improve themselves. Daniel Nelson and Joseph Ceraso had not. Both plaintiff and Mcleod have participated in several of defendant's management development programs. Plaintiff, McLeod and Joseph Ceraso had significant seniority and experience as senior service mechanics. Plaintiff had six (6) years more seniority and experience as a senior service mechanic than Daniel Nelson. The defendant asserts that "[n]o where has Johnson established what the qualifications for his sought after jobs are. Moreover, Johnson has not demonstrated that he possesses those qualifications." (Defendant Post–Trial Brief at 8.) This is not surprising given the fact that the defendant has no written job description of the assistant building supervisor position in question. This type of circular reasoning cannot be allowed to obstruct a plaintiff from supporting his discrimination action.

If an alleged discriminating employer alone has knowledge of the qualifications necessary for advancement, then a plaintiff is made to read his employer's mind. The defendant company has no written policy for promotion and no objective evaluation procedure. No written examinations are offered to enable an employee to demonstrate ability, knowledge and general qualification for promotion. Additionally, defendant does not "post" or otherwise identify available positions in non-entry level jobs to the existing work force. The defendant does not circulate the job qualifications for available positions.

Secondly, plaintiff's performance evaluations were always satisfactory. Defendant contends that "these ratings do not establish themselves his [plaintiff's] qualifications for the higher rated job [of assistant building supervisor]." (Defendant's Post–Trial Brief at 9.) During trial, plaintiff was asked by defendant's counsel to confirm the certain abilities necessary to perform competently as an assistant building supervisor. Plaintiff agreed with the entire list of qualifications recited by defendant's counsel. Plaintiff recognized and demonstrated his knowledge that the supervisory position in question required increased emphasis on interpersonal skills

with subordinates and independent contractors of the company. It is important to note that the attorney for defendant was the first person to actually outline these specific qualifications for the position of assistant building supervisor. There is no credible evidence that plaintiff did not possess these qualifications.

This Court, sitting as fact-finder, finds the testimony of defendant's witnesses suspect. The ultimate decision regarding the assistant building supervisor promotion was left with Eugene Shoosmith, general superintendent of building operations. Although defendant's witness testified that several other candidates with less seniority and experience were considered for the position, it is curious that only those with the greatest seniority, McLeod, plaintiff, and the person who eventually received the promotion, Daniel Nelson, were subjectively evaluated by Shoosmith to select the "best qualified."

Eugene Shoosmith testified that written subjective candidate evaluations were not required by policy or practice. Shoosmith testified that he, alone, determined when and if seniority or a written subjective evaluation of candidates was the appropriate criteria for promotion. Eugene Shoosmith testified that he subjectively selected the "best qualified" person for the job. The testimony of Shoosmith clearly establishes that the process employed was not in the normal course of business since the defendant had no established procedure for promotion of non-entry level employees. Therefore, this Court rejects defendant's contention that the promotion of Daniel Nelson was purely a business decision. This Court finds that the legitimate non-discriminatory business reason proffered by defendant for the promotion of Nelson instead of plaintiff to be mere pretext for intentional race discrimination.

In *Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3rd Cir.1987), Judge Higginbotham very ably noted that "in today's climate of public opinion, blatant acts of discrimination—the true "smoking guns"—can easily be identified, quickly condemned and often rectified in the particular settings where they occur. Much of the discrimination that remains resists legal attack exactly because it is so difficult to prove. Discrimination victims often come to the legal process without witnesses and with little direct evidence indicating the precise nature of the wrongs they have suffered. That is one of the reasons why our legal system permits discrimination plaintiffs to "prove [their] case[s] by direct or circumstantial evidence." See also *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) (emphasis added); *Maxfield v. Sinclair International*, 766 F.2d 788, 791 (3rd Cir. 1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Lewis v. University of Pittsburgh*, 725 F.2d 910, 919 (3rd Cir.1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984).

This Court finds that plaintiff has proven that but for his race, plaintiff would have received the Nelson promotion to the position of assistant building supervisor.[3]

### D.

■ Plaintiff argues that he was also discriminated against because of race with regard to the March 1985 promotion of Frank Felix, a white male. However, plaintiff did not file a complaint with the Pennsylvania Human Relations Commission until June 5, 1986. Consequently, plaintiff's claim is not timely. Further, plaintiff's § 1981 action was not filed with this Court until January 7, 1988. In Pennsylvania the statute of limitations for such an action is two years. *See*, 42 Pa. C.S.A. § 5524. Therefore, plaintiff's claim is dismissed, with prejudice.

### E.

Plaintiff argues that he was discriminated against in the April 1986 promotion of James Chichester at the Peach Bottom

---

**3.** To the extent that the "Discussion" portion of this decision contains findings of fact and/or conclusions of law in addition to those expressly set forth under such headings, they shall be deemed to be part of the respective findings of fact and conclusions of law.

Nuclear Generating Station. However, plaintiff failed to present evidence sufficient to establish a case of race discrimination. Therefore, plaintiff's claim is dismissed, with prejudice.

### III. CONCLUSIONS OF LAW

1. Plaintiff filed this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981, alleging racial discrimination by defendant, Philadelphia Electric Company, in its failure to promote plaintiff to the position of assistant building supervisor.

2. This Court has jurisdiction and venue pursuant to 28 U.S.C.A. §§ 1331 and 1343.

3. Plaintiff followed all administrative remedies and complied with all conditions required to bring an action in this Court.

4. Plaintiff has established a prima facie case of race discrimination regarding the promotion of Daniel Nelson, in that:

(i) plaintiff is black.

(ii) plaintiff is qualified for the position of assistant building supervisor.

(iii) defendant was seeking applicants for job openings in the position of assistant building supervisor.

(iv) plaintiff was not selected.

(v) defendant articulated as the legitimate, non-discriminatory reason for selecting Daniel Nelson the application of the "best qualified" standard as subjectively applied by Eugene Shoosmith.

5. This Court finds that the reasons given by defendant for selecting Daniel Nelson instead of plaintiff were a pretext.

6. Upon review of all the evidence, this Court finds that plaintiff has met his burden of persuasion and proved by a preponderance of the evidence that defendant, Philadelphia Electric Company, discriminated against plaintiff based on his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

7. Plaintiff is entitled to such relief as will place him in the same position he would have been in absent the violation of his civil rights. In order to accomplish this, plaintiff shall be entitled to such retroactive and prospective pay, seniority and benefits as he would have received had he been promoted to the position of assistant building supervisor as of April 17, 1986. In addition, plaintiff shall be entitled to a promotion to the position of assistant building supervisor as soon as the next available opening for that position occurs.

8. Plaintiff has presented direct and substantive evidence upon which this Court could reasonably conclude that plaintiff has suffered mental and emotional distress as a result of defendant's actions. Plaintiff is entitled to recover compensatory damages for mental anguish in the amount of $10,000.

9. Plaintiff's claim regarding the promotion of Frank Felix is dismissed, with prejudice.

10. Plaintiff's claim regarding the promotion of James Chichester is dismissed, with prejudice.

An appropriate order follows.

### FINAL JUDGMENT

AND NOW, this 15th day of March, 1989, in following with the foregoing Findings of Fact and Conclusions of Law, it is hereby ORDERED that:

1. Judgment is entered in favor of the Plaintiff Robert W. Johnson and against the Defendant Philadelphia Electric Company.

2. Defendant shall retroactively and prospectively pay to Plaintiff all additional base wages, exclusive of overtime, and provide Plaintiff all seniority and fringe benefits that Plaintiff would have received and obtained had he been promoted to the position of Assistant Building Supervisor as of April 17, 1986.

3. Defendant sh⁻ ʰ promote Plaintiff to the position of A٬      ant Building Supervisor at the Phila      ᵢ ia Electric Company. Said promotion shall be made upon the occurrence of the next vacancy or opening

for an Assistant Building Supervisor at the Philadelphia Electric Company in the City and County of Philadelphia, Pennsylvania.

4. Defendant shall pay Plaintiff the amount of $10,000 (Ten Thousand Dollars) in compensatory damages for emotional distress.

5. Plaintiff shall receive the costs of suit and a reasonable attorney's fee. If the parties are unable to agree as to the amount of fees and costs, plaintiff may file a petition for an award of fees and costs.

Barry F. Penn, Penn & Starwood, Philadelphia, Pa., for Society Hill Carriage Co., Ltd.

Susan Dein Bricklin, Asst. U.S. Atty., for Nat. Park Service.

Val Pleet Wilson, Philadelphia, Pa., for Philadelphia Carriage Co., Inc.

Jonathan D. Schiffman, Philadelphia, Pa., for James Slocum, t/a 76 Carriage Co. Inc.