**Ronald DREW, Petitioner,**

v.

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 3, 1997.

Decided Jan. 30, 1997.

John Stember, Pittsburgh, for petitioner.

Diane Blancett–Maddock, Pittsburgh, for respondent.

Gregory A. Karle, Erie, for intervenor, City of Erie.

Before DOYLE and PELLEGRINI, JJ., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

Ronald R. Drew petitions for review of the order of the Pennsylvania Human Relations Commission (PHRC) dismissing his complaint which alleged discrimination in promotions by the City of Erie (City), intervenor in this appeal.

Drew is an African–American individual who was hired by the City as a police officer in 1974.[1] After serving as a patrol officer for three years, Drew was assigned to the crime prevention area and was promoted to the rank of sergeant in 1982. He was reassigned to the criminal investigations division in 1984, but was transferred in 1987 back to the patrol division due to a letter from the county district attorney alleging serious investigative failures on his part. Although a police department investigation resulted in a recommendation that Drew be demoted, the transfer was the only disciplinary action taken.

On March 8, 1991, the City posted an announcement of promotional opportunities to the lieutenant position. Drew and 11 other sergeants applied for the promotion. The Chief of Police created a four-member promotion board, consisting of the police department's four captains, to assess the applicants' qualifications. All four members of the promotion board were white males. The promotion board developed a list of criteria for consideration: education, experience, management skills, leadership skills, organizational and planning skills, interpersonal skills, communication skills, physical fitness, knowledge of the law and knowledge of police procedures. They then interviewed the applicants asking each one the same set of questions and reviewed personnel files.

After the interviews, the board members discussed all 12 applicants; then each board member listed his top six candidates. Drew was not on any member's list of the top six candidates. From those lists, the board again discussed the candidates and narrowed the list to four candidates. The board recommended the promotion of those four candidates—one white female and three white males. The chief of police presented the list to the mayor of the City without change and the mayor approved the promotions.

Drew then filed a complaint with the PHRC alleging racial discrimination, in violation of Section 5(a) of the Pennsylvania Human Relations Act (Act),[2] with respect to the promotion of two of the applicants—Sergeant Thomas Adams and Sergeant Karen Weston. In cases filed under Section 5(a) of the Act,[3] the Pennsylvania courts apply the analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[4] Under this analysis, adopted by our Supreme Court in *General Electric Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976), the complainant has the burden to establish a *prima facie* case for employment discrimination by proving:

   a.  that he is a member of a protected class;

   b.  that he applied for a position or promotion for which he was qualified;

   c.  that his application was rejected; and

   d.  that the employer continued to consider or promoted applicants of equal qualifications.

*City of Pittsburgh*, 630 A.2d at 922.

   Once the plaintiff establishes a *prima facie* case, a presumption of discrimination

---

1. Drew was hired under a federal court consent decree which ordered the City to hire 20 new police officers of which ten officers had to be black.

2. Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(a).

3. Under Section 5 of the Act:
   It shall be unlawful discriminatory practice, unless based upon a bona fide occupational qualification, . . . :

   (a) For any employer because of race [or] color, . . . to discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the service required.
   43 P.S. § 955.

4. The analysis was created in *McDonnell Douglas* to apply to cases arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17.

is raised, which can be rebutted by the employer. To overcome the presumption, the employer must go forward with evidence of nondiscriminatory motive. If the employer meets this burden, the plaintiff can ultimately prevail if he can show by a preponderance of the evidence that the employer's proffered reason was pretextual. It is then up to the trier of fact to decide which party's explanation of the employer's motivation it believes.

*Taylor v. Pennsylvania Human Relations Commission*, 681 A.2d 228, 232 (Pa.Cmwlth. 1996) (Citations omitted). In a disparate treatment case, such as this, it is always the complainant's burden of persuading the factfinder by a preponderance of the evidence that the employer intentionally discriminated against him. *Allegheny Housing Rehabilitation Corp. v. Commonwealth, Pennsylvania Human Relations Commission*, 516 Pa. 124, 532 A.2d 315 (1987).

■ The PHRC initially found probable cause for the complaint and a public hearing was scheduled. At the hearing, Drew testified on his own behalf. He stated that he believed he was more qualified than Adams and Weston because he had more seniority as a sergeant than either of them. The City presented the testimony of three of the members of the board who discussed the process the board followed and explained their reasons for not recommending Drew, as follows: Drew had less experience in the patrol division where the lieutenant positions were open, the disciplinary action against Drew for mishandling an investigation in 1987, Drew's refusal to comply with certain department procedures and to enforce those procedures on officers under his command as a sergeant, Drew had less education, and Drew's failure to follow the instructions for the application for promotion, which even if inadvertent, showed a lack of attention to detail. The board members also testified that they neither bore Drew any ill will nor harbored any racial animus towards him.

■ The decision of the hearing officer, which was adopted by the PHRC, held that Drew had established a "sufficient, but thin," *prima facie* case against the City. The PHRC found that the reasons offered by the City for failing to promote Drew were all legitimate reasons. As such, it held that the City met its burden to prove nondiscriminatory reasons for its action. The PHRC also held that Drew failed to prove that the reasons proffered by the City were pretextual, stating that Drew simply offered no evidence of a discriminatory reason for the promotion. The PHRC then dismissed the complaint and Drew filed this appeal.[5]

Drew contends that the City failed to present sufficient evidence establishing legitimate, non-discriminatory reasons for failing to promote him.[6] Drew argues that because one of the board members did not testify as to his reasons, the burden never shifted back to him and there can be no conclusion that the decision was nondiscriminatory. The City presented the testimony of three of the four board members on the board's evaluation of Drew in comparison to the chosen candidates, that is, the relative qualifications of Drew, Adams and Weston, in experience and education, and on concerns raised with Drew's qualifications, such as his disciplinary transfer, his refusal to follow department regulations, and his failure to follow instructions for the application. With that testimony, the City presented legitimate reasons for the board's decision as a whole, meeting its burden of production, and the burden again fell to Drew.[7] If Drew believed that the

---

5. Our scope of review is limited to determining whether the findings of fact necessary to support the adjudication are supported by substantial evidence, whether there was a violation of constitutional rights, or whether an error of law was made. *City of Pittsburgh v. Pennsylvania Human Relations Commission*, 157 Pa.Cmwlth. 564, 630 A.2d 919 (1993), *appeal dismissed*, 538 Pa. 318, 648 A.2d 326 (1994).

6. There is no dispute in this case that Drew is a member of a protected class, that he requested promotion to the position of lieutenant for which he was qualified, that he was denied the promotion, and promotions were awarded to white candidates.

7. Drew cites to *Grier v. The Secretary of the Navy of the United States*, 677 F.Supp. 362 (E.D.Pa. 1987), for the proposition that the testimony of the three members was insufficient. The case does not stand for such a proposition. In *Grier*, the District Court held that because the employer's burden of production is to articulate a legiti-

fourth member of the board made his decision on a discriminatory basis, he could have called that member to testify or presented other evidence of racial animus; however, he failed to do so.[8]

Drew also contends that the City's proffered reasons for failing to promote him were unworthy of belief because they were too subjective. The legitimacy of an articulated reason is subject to particularly close scrutiny where the evaluation is subjective and the evaluators themselves, as here, are not members of the protected class. *Henry v. Lennox Industries, Inc.,* 768 F.2d 746, 751 (6th Cir.1985); *Grano v. Department of Development of the City of Columbus,* 699 F.2d 836, 837 (6th Cir.1983). Specifically, where the ultimate decision is based on personal interviews, it is more subject to doubt. *Bennett v. Veterans Administration Medical Center,* 721 F.Supp. 723 (E.D.Pa.1988); *Johnson v. Philadelphia Electric Company,* 709 F.Supp. 98 (E.D.Pa.1989).[9] However, where employers are attempting to fill managerial positions, absent additional evidence of discriminatory intent, the use of subjective criteria in the employment decisions does not alone establish discrimination in a disparate treatment case. *Burrows v. Chemed Corporation,* 567 F.Supp. 978, 985 (E.D.Mo.1983), *affirmed,* 743 F.2d 612 (8th Cir.1984).

If the promotion board had relied solely on its personal views after interviewing the candidates, the PHRC would have

been required to more closely scrutinize the decision. However, the board established a promotion procedure that relied on numerous objective criteria, which it applied to all applicants, as well as the subjective determinations of the members. Because the board relied on both objective and subjective reasons in its decision not to promote Drew, particularly, the comparative experience, education and management skills of Drew, Adams and Weston, we cannot agree that its proffered reasons were inherently unworthy of belief. *See Burrows.*[10]

The PHRC, as the factfinder, credited the board members' testimony that they compared his qualifications to the applicants chosen and that they had no discriminatory intent. Based on its credibility determinations and the fact that Drew offered no evidence of discriminatory intent, the PHRC concluded that the City's reasons were not pretextual. Accordingly, Drew did not meet his burden of persuading the PHRC that the City acted on discriminatory intent and we affirm.

### ORDER

AND NOW, this 30th day of January, 1997, the order of the Pennsylvania Human Relations Commission of July 30, 1996, Docket No. E–56948–AD, is affirmed.

---

mate reason through clear and reasonably specific evidence, the employer failed to meet its burden because it failed to produce *any* evidence on the criteria used to rank the applicants or to present the testimony of *any* person with knowledge of such criteria or of the reasons why Grier was not promoted. *Id.* at 367.

**8.** We again note that the ultimate burden of persuading the factfinder that the City intentionally discriminated against him remained at all times with Drew. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

**9.** In *Bennett,* the interviewers had no set formula or procedure for conducting interviews and any notes taken were destroyed. Likewise, in *Johnson,* the employer had no objective evaluation process and did not provide a job description or job qualifications for the available position.

**10.** Drew also asserted that his statistical evidence of underrepresentation of minorities in the

police force and in command positions, as well as past practices, is highly probative. While it is true that such evidence is generally of probative value to establish intent, it is not determinative of the City's reasons for its failure to promote Drew. *Burrows,* 567 F.Supp. at 985 n. 2. *See also Johnson v. Bunny Bread Company,* 646 F.2d 1250, 1255 (8th Cir.1981). More importantly, the PHRC concluded that the statistical evidence was insufficient because it lacked any meaningful focus, was inconclusive and used too small a number of statistical samples to be useful. *See Bennett,* 721 F.Supp. at 730. Although on the surface, Drew's statistical data was damaging as to the lack of minorities in command positions, there was also evidence that minorities have been hired by and promoted within the police department and the statistics appear inconclusive. Therefore, we find no error by the PHRC in regard to the statistical evidence.