**Norman GRIER**

v.

**The SECRETARY OF the NAVY OF the UNITED STATES.**

Civ. A. No. 86–6267.

United States District Court, E.D. Pennsylvania.

Dec. 30, 1987.

Peter A. Buxbaum, Philadelphia, Pa., for plaintiff.

Jerome A. Snyder, Philadelphia Naval Shipyard, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

CAHN, District Judge.

The plaintiff, a civilian employed at the Philadelphia Naval Shipyard, brought this action against the Secretary of the Navy under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The plaintiff alleges that he failed to receive various promotions based upon the unlawful consideration of his race. On June 4, 1987, I entered an order dismissing plaintiff's claims with respect to all but one of the promotions. The question that remains is whether the plaintiff was unlawfully dis-

criminated against when he was denied a promotion to the WG–10, Rigger position on May 11, 1984. Because I find that the defendant has failed to rebut plaintiff's prima facie case of discrimination, judgment will be entered in favor of the plaintiff.

The plaintiff, Mr. Grier, is black. In June, 1983, while employed as a Rigger Helper (WG–5), Mr. Grier applied for a position as a Rigger (WG–10). On May 13, 1984, the defendant promoted ten individuals to the Rigger position, two of whom are black. Mr. Grier, however, was not selected.[1]

The process the Navy used to make the selections, as far as it can be reconstructed, was as follows. The Industrial Relations Office first reviewed the applications and qualifications of the various applicants. The candidates were then ranked and those who met the minimum qualifications for the job were placed in one of two categories—"qualified" or "highly qualified." For purposes of the promotion at issue in this case, Mr. Grier was rated "qualified."[2] There was testimony to the effect that the knowledge, skills, and abilities of the candidates as reflected in their applications and their supervisory appraisals were measured against criteria set forth in a written crediting plan to determine which candidates were "highly qualified." Counsel for the defendant informed the court, however, that the crediting plan for this specific promotion had been destroyed.

The Industrial Relations Office submitted a "Certificate of Eligibles" with the names of twenty-one "highly qualified" candidates to the selecting official, Mr. Di-Santo. Three individuals on this certificate were black. Mr. DiSanto, with the advice of a panel chosen by him, selected ten individuals from the Certificate to fill the Rigger positions.[3] Two of the individuals

eventually chosen were black. With respect to each individual on the Certificate, a synopsis of why that person was or was not selected was drafted by the members of the panel.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set out the now familiar pattern of shifting burdens in a Title VII case. When the evidence is circumstantial, the employee has the initial burden of establishing a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. at 1824. Once established, this prima facie case raises a presumption that the employer intentionally discriminated against the employee. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

If the employee establishes a prima facie case, the burden then shifts to the employer to articulate, through the introduction of competent evidence, some clear and reasonably specific, legitimate, nondiscriminatory reason for its actions. *Id.* at 256, 258, 101 S.Ct. at 1095, 1096; *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir.1985). If the employer fails to produce sufficient evidence of the reason for its action to raise a genuine issue of fact, the court must enter judgment for the plaintiff. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Robinson v. Lehman*, 771 F.2d 772 (3d Cir.1985). Nonetheless, the burden on the defendant is one of production, not persuasion. *Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096. "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254, 101 S.Ct. at 1094. Rather, the sufficiency of the defendant's evidence must be evaluated by the extent to which it serves to present a legitimate reason for the action and to frame the factual issue

---

**1.** Between the time of his application and the date on which selections were made for the Rigger position, Mr. Grier was promoted through a separate process to the position of Rigging Worker (WG–8).

**2.** In 1985, Mr. Grier was rated "highly qualified" in connection with a subsequent application for promotion to the Rigger position.

**3.** In addition to the twenty-one "highly qualified" candidates on the Certificate, there was one "reinstatement eligible" individual who was not selected. The criteria used with respect to this individual are not at issue in this case.

with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. *Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95.

If the defendant comes forward with sufficient evidence to create a genuine issue of fact, the burden shifts to the plaintiff to prove that the proffered reason is a pretext for intentional discrimination. The employee may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095.

The first question for this court is whether Mr. Grier has established a prima facie case of discrimination. In *McDonnell Douglas,* the Supreme Court stated that a plaintiff may establish a prima facie case by showing "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1924. *McDonnell Douglas* involved allegations of discriminatory hiring, not discriminatory promotion. The *McDonnell Douglas* test, however, is flexible and should be adapted to fit differing factual situations. *See Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13; *see also International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977).

In *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 375 (6th Cir.1984), the sixth circuit held that the plaintiff had established a prima facie case of a discriminatory failure to promote by proving that "he was a member of a protected group, applied for promotion to a job for which he was qualified and was rejected in favor of [another candidate], who had comparable qualifications." *Id.* at 377. Similarly, in *Harris v. Wal–Mart,* 658 F.Supp 62, 69 (E.D.Ark.1987), the court held that to prove

a prima facie case of a discriminatory failure to promote, a plaintiff must show "(1) that she was a member of a protected class; (2) that there was a vacancy for the position; (3) that she was qualified for the position; and (4) that the person chosen for the position was not a member of plaintiff's protected class." *See also Jordan v. Wilson,* 649 F.Supp. 1038, 1054 (M.D.Ala.1986) ("An employee may establish a prima facie case of promotion discrimination by proving that she is a member of a protected group, was qualified for and applied for the promotion, was rejected despite these qualifications, and that other employees with equal or lesser qualifications who were not members of the protected group were promoted."). In the present case, Mr. Grier has offered evidence showing that he is black, that he applied for and met the qualifications for promotion to the Rigger position, that he was rejected, and that white individuals with comparable qualifications were promoted to the Rigger position.

In spite of this showing, the defendant claims that Mr. Grier has failed to establish a prima facie case on two different grounds. First, the Secretary contends that Mr. Grier was not qualified for the position. The Secretary's argument is that, in the Navy, "highly qualified" is a term of art which really means qualified. Mr. Grier was not qualified for the job because he was found to be "qualified" and only the names of "highly qualified" individuals were placed on the Certificate of Eligibles. This argument is fatally deficient. It ill-behooves the Secretary, in the first place, to controvert the plain meaning of his own words. In any case, the Secretary has failed to prove that at the Philadelphia Naval Shipyard the term "qualified" means anything other than what it normally connotes. Moreover, in *Robinson v. Lehman,* 771 F.2d 772 (3d Cir.1985), a case cited by the defendant, Judge Higginbotham explained the meaning and application in very similar circumstances of the terms "qualified" and "highly qualified" at the Navy's Aviation Supply Office in Philadelphia. In *Robinson,* Judge Higginbotham found that both "qualified"

and "highly qualified" candidates were eligible for promotion. *Id.* at 775 & n. 7.

■ Mr. DiSanto, the selecting official for the promotion at issue in this case, stated in his deposition that the designations "qualified" and "highly qualified" are attached as a result of the work of a rating panel, that "qualified" individuals are occasionally promoted before "highly qualified" individuals, and that "qualified" individuals can appear on a Certificate alongside of "highly qualified" individuals. It is clear, therefore, that the determination of whether an individual is "qualified" or "highly qualified" is merely the first step in a two-step selection process. It is also clear that "qualified" individuals are qualified for promotion but are not chosen when there is a sufficient number of eligible "highly qualified" individuals, and that the term "highly qualified" represents a judgment about an individual's credentials but is not itself a prerequisite for the job. To rank qualified candidates, divide them into two categories—"highly qualified" and "qualified," and then turn around and say that the "qualified" candidates were never really qualified in the first place, is to reify the term "highly qualified" and stand the term "qualified" on its head. The Secretary cannot insulate the first stage of the selection process from scrutiny by interposing a judgment made at that stage and raising it to the level of a qualification for the job.

■ The second ground relied upon by the Secretary in claiming that the plaintiff has failed to make out a prima facie case of discrimination is the argument that it is impossible to prove a prima facie case when two out of three "highly qualified" black candidates were eventually selected for the job and 20 percent of those actually promoted were black. This argument also misses the mark. In a disparate treatment case,[4] statistical evidence tending to show that the representation of protected group members in a given hiring, promotion, or workforce is equal to or greater than their representation in the relevant population, does not preclude a plaintiff from establishing a prima facie case of discrimination. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 579–80, 98 S.Ct. 2943, 2950–52, 57 L.Ed.2d 957 (1978).

In *Furnco*, bricklayers were hired for a construction job over a time period of slightly less than two months. The employer attempted to show that for the hiring as a whole, 20 percent of those hired were black and 13.3 percent of the mandays spent on the job were performed by black bricklayers, while 13.7 percent of the local union membership was black. The Supreme Court held that, as a matter of law, the respondents had made out a prima facie case of discrimination. *Id.* at 575, 98 S.Ct. at 2948–49. In support of this conclusion, the court stated: "It is clear beyond cavil that the obligation imposed by Title VII is to provide an equal opportunity for *each* applicant regardless of race, without regard to whether members of the applicant's race are already proportionately represented in the workforce." *Furnco*, 438 U.S. at 579, 98 S.Ct. at 2951; *see also Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544, 91 S.Ct. 496, 497–98, 27 L.Ed. 2d 613 (1971) (per curiam) (summary judgment improper when based upon showing of equal or greater representation of women in workforce than in applicant pool). The policy of Title VII, it should be remembered, "requires that we focus on fairness to individuals rather than fairness to classes." *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 709, 98 S.Ct. 1370, 1376, 55 L.Ed.2d 657 (1978).

The Court of Appeals for the Third Circuit "has not been overly demanding of the proof required for a *prima facie* case." *Jackson v. U.S. Steel Corp.*, 624 F.2d 436, 440–41 (3d Cir.1980) (quoting *Whack v. Peabody & Wind Eng'g Co.*, 595 F.2d 190, 193 n. 11 (3d Cir.1979)). To establish a

---

**4.** In *EEOC v. Greyhound Lines, Inc.*, 635 F.2d 188 (3d Cir.1980), a majority of the court distinguished *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), in order to hold that *in a discriminatory impact case*, a prima facie case was not established when statistics showed there was a higher percentage of black males in the position in question than in the labor force and the general population of the relevant geographic area.

prima facie case, a plaintiff must only show "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco*, 438 U.S. at 576, 98 S.Ct. at 2949 (quoting *International Brotherhood of Teamsters v. U.S.*, 431 U.S. at 358, 97 S.Ct. at 1866). A prima facie case is not equivalent to a factual determination of discrimination but rather "is simply proof of actions taken by the employer from which we infer discriminatory animus because experience has shown that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible consideration." *Furnco*, 438 U.S. at 579–80, 98 S.Ct. at 2951. A prima facie case is established, and an inference of discrimination arises, therefore, when an employee demonstrates "that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *Teamsters*, 431 U.S. at 358 n. 44, 97 S.Ct. at 1866 n. 44; *see also Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94. With these considerations in mind, it is clear that Mr. Grier has made a prima facie showing. The defendant's statistical evidence would be relevant in attempting to show a lack of discriminatory motive or animus at the third stage of the *McDonnell Douglas* analysis.[5] *See Furnco*, 438 U.S.

at 580, 98 S.Ct. at 2951–52; *Watson v. Fort Worth Bank & Trust*, 798 F.2d 791, 798 (5th Cir.1986), *cert. granted in part*, —— U.S. ——, 107 S.Ct. 3227, 97 L.Ed.2d 734 (1987). The same evidence, however, does not defeat plaintiff's prima facie case.

Once a prima facie showing has been made, the burden shifts to the employer to articulate, through the introduction of competent evidence, some clear and reasonably specific, legitimate nondiscriminatory reason for its action. The Secretary has candidly conceded that the crediting plan which contained the criteria used to determine whether candidates were "qualified" or "highly qualified" has been destroyed. As a consequence, the Secretary does not know why Mr. Grier was designated only "qualified." Counsel for the Secretary argues that the defendant may meet this burden "merely be explaining what it did." Defendant's Post Trial Memorandum at 4. This statement, however, misconstrues the nature of the defendant's burden. A Title VII defendant cannot meet a prima facie case merely by articulating any reason, but must articulate a clear and reasonably specific, legitimate nondiscriminatory reason for its actions.[6]

In support of his position, the defendant cites *Burdine* for the proposition that the burden of persuasion rests on the plaintiff and never shifts. Even after the plaintiff has established a prima facie case, the burden of persuasion does not shift—assuming, of course, the defendant meets its bur-

---

5. In any event, the fact that 2 out of 3 "highly qualified" black candidates were selected is, at best, only marginally relevant. The issue in this case, once the defendant made the contention that the plaintiff was not promoted because he was not designated "highly qualified," is why the plaintiff was not "highly qualified." It proves very little to demonstrate that two out of three black individuals who were designated "highly qualified" were eventually promoted.

6. The defendant cites *Robinson v. Lehman*, 771 F.2d 772 (3d Cir.1985), in support of its position that he has sustained his burden by showing that only "highly qualified" individuals were on the Certificate and that Mr. Grier was not "highly qualified." Specifically, the defendant refers to the statement that "the Navy, by asserting that Robinson was not considered for selection because he was not ranked high enough to be

placed on the certificate of Eligibles, articulated a reason for Robinson's non-promotion." *Id.* at 777 n. 13. In *Robinson*, however, the Navy presented evidence regarding the manner in which it ranked candidates, including the Merit Promotion Plan itself, supervisory appraisals, and explanations of the criteria and point-system employed by the rating panel. For example, in *Robinson*, "highly qualified" applicants were those candidates who, after, a supervisory appraisal comprising 7 job elements and 25 subelements, had a total raw point value of at least 21 on a scale of 0 to 28. *Robinson*, 771 F.2d ta 776. The Navy's explanation that Robinson was not promoted because he was not ranked high enough on the Certificate of Eligibles, in contrast with the Navy's statement that Mr. Grier was not promoted because he was not "highly qualified," was not merely conclusional.

den of production. If the defendant fails to meet this burden, the presumption created by the plaintiff's prima facie case requires that judgment be entered in favor of the plaintiff. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Robinson*, 771 F.2d at 777 n. 13. To meet this burden, the defendant need not prove that it was actually motivated by the reason it puts forth, but it must nonetheless articulate some legitimate reason for its action.

As the eleventh circuit has stated, "since the defendant's explanation must be clear and reasonably specific, some proffered reasons will be legally insufficient to rebut a prima facie case." *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir.1985) (citing *Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096); *see also Crawford v. Western Elec. Co., Inc.*, 745 F.2d 1373, 1384, (11th Cir.1984) (finding that with respect to several plaintiffs, defendant had failed to meet prima facie case, and stating that "[g]eneral and non-time specific testimony" is not sufficient to meet burden of production under *Burdine*).

In Title VII cases, the reason for proceeding within the framework established by *McDonnell Douglas* is not only to "enable the trial judge to sift through the evidence in an orderly fashion", *Dillon v. Coles*, 746 F.2d 998 at 1003 (3d Cir.1984); *see also U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983), but also because "in most discrimination cases direct evidence of the employer's motivation is unavailable or difficult to acquire." *Dillon*, 746 F.2d at 1003. The employer's proffered reason must be sufficiently capable of objective evaluation to give the plaintiff a "full and fair opportunity" to prove that the reason is pretextual, and to present the fact finder with a reasonable basis for determining whether the reason was actually relied on. *See Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95; *Connor*, 761 F.2d at 1499–1500.

In the present case, the defendant has not met its burden of production in that it has failed to articulate a clear and reasonably specific, legitimate, nondiscrimina-tory reason for failing to promote Mr. Grier. It is not enough to say that only "highly qualified" individuals were selected and that Mr. Grier was not found to be "highly qualified." The defendant did not produce the merit promotion package used to rank the candidates, nor did it offer the testimony of a single individual who had knowledge of its contents or of the reasons why Mr. Grier was not promoted. The evidence adduced by the defendant consisted solely of testimony with respect to the criteria currently being used for similar promotions and the factors generally taken into account at the Shipyard in making employment decisions. The defendant's witness, Mr. Conley, however, had no knowledge as to whether the same criteria had been used in making the decision not to promote Mr. Grier.

This is not the kind of evidence "that would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1096. Therefore, the defendant has failed to meet its burden of production and judgment must be entered in favor of the plaintiff. This court does not doubt the good faith of the defendant in failing to come forward with evidence of his reasons for not promoting Mr. Grier. Nonetheless, I cannot subscribe to a rule of law that would encourage employers to destroy or misplace personnel documents in order to obfuscate their reasons for making employment decisions.

The parties agree that an appropriate remedy, assuming judgment is entered in favor of the plaintiff, is retroactive promotion to the WG–10, Rigger position effective May 11, 1984, with back pay from that date to the date of judgment. Accordingly, my order will reflect this understanding.

An appropriate order follows.

### ORDER

AND NOW, this 30th day of December, 1987, after a hearing on contested facts and argument by counsel on legal issues, IT IS ORDERED as follows:

1. Judgment is ENTERED in favor of plaintiff Norman Grier and against the Secretary of the Navy of the United States.

2. Plaintiff Norman Grier is AWARDED retroactive promotion to the WG–10 Rigger Position as of March 11, 1984, with back pay from that date to the date of this order.

3. Defendant Secretary of the Navy is DIRECTED to comply with said award forthwith by promoting the plaintiff to the WG–10 Rigger position as of March 11, 1984 and paying the plaintiff back pay from that date to the date of this order.