**Maritess C. PRUDENCIO and Robin C. Prudencio, Plaintiffs,**

v.

**Marvin RUNYON, Postmaster General, United States Postal Service, Defendant.**

No. CIV. A. 97–0004–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Nov. 25, 1997.

Neal L. Walters, Gilliam, Scott & Kroner, P.C., Charlottesville, VA, for Plaintiff.

Julie C. Dudley, U.S. Atty's Office, Roanoke, VA, for Defendant.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

This Title VII "failure to hire" action involves allegations of national origin discrimination. Because the plaintiffs have established a *prima facie* case of intentional discrimination and because the defendant has failed to rebut the presumption of

discrimination arising from the *prima facie* case by adducing evidence of a "legitimate, nondiscriminatory reason" for the failure to hire, plaintiffs are entitled to judgment as a matter of law pursuant to *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny.

## I.

In this consolidated action, the plaintiffs, Maritess and Robin Prudenclo ("Prudencio"), are brother and sister. Both are of Asian (specifically, Philippine) origin. In 1989, both took a United States Postal Service ("USPS" or "Post Office") qualifying examination in an effort to secure employment with the Post Office. Both of the plaintiffs passed the test; Maritess Prudencio received a score of 98.80 out of a possible score of 100 and Robin Prudencio got a score of 94.00. Upon receipt of such passing scores, the plaintiff's were qualified in all respects to be considered for employment.

After the test, in May 1989, the Post Office apparently placed job applicants names on a "register" in Richmond from which persons eligible for employment are drawn as and when positions become available at designated branches. Names were to be placed on the register in numerical order by the score each applicant received on the qualifying test. When a position opened up, a computer-generated list of names was to be produced in the order of the scores received on the test.

Between 1989 and November 1993, the Post Office never contacted the plaintiffs concerning their status for potential employment. Discovery in this litigation reveals that at least twice during this period, the U.S.P.S. issued hiring worksheets for the Charlottesville branch of the Post Office when job positions became available there. On January 29, 1990, the worksheet listed the fifty highest ranking applicants. Maritess was listed at position "22;" Robin failed to make the list because the test score of the lowest ranking applicant was 95.80. On August 2, 1993, a second such worksheet was issued for the Charlottesville branch. The list named the top forty scorers on the test

with a cut-off score of 90.30. Neither plaintiff's name was on the list. Persons with identical scores to Maritess and Robin Prudencio ranked "11" and "24," respectively.

In May 1993, the plaintiffs requested an "Individual Applicant Ranking Report" from the USPS which shows a job applicant's current ranking on the applicable register for certain jobs at identified post office branches. The Post Office issued the reports in November 1993. The reports indicated that both plaintiffs ranked anywhere from first to twenty-second for positions at the Charlottesville, Earlysville, and Ivy branches of the Post Office.

On May 27, 1994, the U.S.P.S. again issued a hiring worksheet for the Charlottesville branch. The list included the top sixty names for five available positions. Although the first listed person's score was 93.30 and the last listed person's score was 83 80, neither plaintiff's name appeared on the list. Of the four persons hired from the worksheet's list of names all had lower test scores than the plaintiffs; three of the persons hired were white, one was black and none was Asian.

The Prudencios filed informal national origin discrimination complaints with the Equal Employment Opportunity ("EEO") counselor at the Post Office on September 21, 1994. On November 23, 1994, within fifteen days of receipt of the counselor's notice that her investigation had been completed, plaintiffs filed a timely formal complaint with the EEOC. On June 1, 1995, the Prudencios' attorney received the agency's investigative report which included the investigator's conclusion that the U.S.P.S.'s failure to include the plaintiffs' names on the hiring worksheets it sent to the Charlottesville branch had been an "unfortunate error" but one not owing to discrimination. On June 16, 1995, the plaintiffs elected to have a hearing before an Administrative Law Judge ("ALJ") pursuant to 29 C.F.R. § 1614.108(f).

On September 26, 1996, the ALJ issued a decision in favor of the Prudencios on their national origin discrimination claims. The ALJ found that the plaintiffs had established a *prima facie* presumption of racial discrimi-

nation which the Post Office had failed to rebut with evidence of a "legitimate, nondiscriminatory" reason under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) framework. On November 27, 1996, the Post Office issued its final agency decision which rejected the ALJ's conclusions; the USPS continued to maintain that it had not discriminated against the plaintiffs. Within ninety days of the issuance of this final decision, Maritess and Robin Prudencio filed the instant actions under Title VII, 42 U.S.C. § 2000e–2(a)(1).

## II.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and by Standing Order, the court referred this case to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition, subject to review by this court On October 24, 1997, the Magistrate Judge filed his Report and Recommendation, which recommends (1) that defendant's September 11, 1997 motion to dismiss or, in the alternative, for summary judgment be denied, and (2) that plaintiffs' September 15, 1997 motion for summary judgment be denied.

The plaintiff and the defendant filed objections to the Report and Recommendation on November 10 1997 and November 6, 1997, respectively, Said objections having been timely and appropriately lodged, this court has undertaken a *de novo* review of the case *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982).

After a thorough examination of the parties' objections, the supporting memoranda, the applicable law, the documented record, the Report and Recommendation, and oral argument on the parties' objections to the Report and Recommendation, this court adopts the Report and Recommendation in part and declines to adopt it in part.

## III.

### A. *Motion to Dismiss Standard*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure "failure to state a claim

upon which relief can be granted" provides grounds for dismissal. For purposes of a Rule 12(b)(6) motion, all factual allegations in the plaintiffs complaint must be accepted as true. *Estate Constr. Co. v. Miller & Smith Holding Co.* 14 F.3d 213, 217–18 (4th Cir. 1994). The plaintiff's complaint ought not be dismissed unless it is apparent that the plaintiff "would not be entitled to relief under any facts which could be proved in support of [his] claim[s]." *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### B. *Summary Judgment Standard*

Because the defendant moves for summary judgment in the alternative to its motion to dismiss, this case effectively comes before the court on cross motions for summary judgment. Summary judgment should be granted if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." Fed. R.Civ.P. 56(c).[1]

## IV.

### A. *Title VII and the McDonnell–Douglas Prima Facie Test*

Under Title VII of the Civil Rights Act of 1964, "It shall be an unlawful employment practice for an employer ... to fail or refuse to hire. any individual ... because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1).

In Title VII intentional discrimination cases which yield only circumstantial evidence of discrimination, the governing proof framework was established by *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In a failure to

---

**1.** In argument on the instant motions, the parties concede that no genuine issues of fact in this

case are controverted. Thus, one party or the other is entitled to judgment as a matter of law.

hire case, as here, a Title VII plaintiff establishes a *prima facie* case of national origin discrimination if he produces evidence that: (1) he was a member of a protected national origin group; (2) he was qualified for a job for which the defendant-employer was seeking applicants; (3) that he was rejected for employment despite his qualifications; and (4) that the position remained open and the defendant-employer continued to seek or accept applications from persons with the same qualifications but outside the protected class. *See Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir.1995).

Under this proof scheme, Title VII plaintiff first has the initial burden of production on the *McDonnell Douglas* elements. *See Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315 (4th Cir.1993). If the plaintiff adduces evidence establishing a *prima facie* case of national origin discrimination, a presumption in favor of the existence of the unlawful discrimination arises[2] and the burden of production shifts to the defendant-employer who next must articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Assuming that the defendant demonstrates such a reason, the burden of production then shifts back to the plaintiff to show that the employer's proffered reason is pretextual. *Id.* Notwithstanding the shifting burdens of production, at all times the plaintiff retains the ultimate burden of persuasion on the allegation of impermissible discrimination. *Id.*

█ In the present case, the Prudencios have met the burden of production necessary to establish the various *prima facie* elements of *McDonnell Douglas* and to avoid a Fed. R.Civ.P. 12(b)(6) motion.[3] Indeed, "[t]he burden of establishing a prima facie case of disparate treatment is not onerous" *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67

L.Ed.2d 207 (1981). Plaintiffs have alleged sufficient facts in their complaint to state a claim for discriminatory failure to hire. The Prudencios are members of a protected class because of their national origin (Philippine); they were qualified, by virtue of their high scores on the Post Office tests, for the job in the Charlottesville branch for which the USPS was seeking applicants; they were not hired despite their qualifications; and the positions remained open and the USPS continued to seek or accept applications. The defendant-employer filled the positions in question with persons of the plaintiffs' qualifications, but from outside the Title VII protected class (i.e., the white persons hired). Moreover, in the administrative proceedings below, the Post Office admitted that the plaintiffs met all elements of the *prima facie* test.

█ The U.S.P.S. objects to the Report and Recommendation's finding that the plaintiffs established a *prima facie* case of national origin discrimination. The defendant argues, correctly, that their admissions in the administrative hearing are not binding because the Prudencios' claim must be reviewed *de novo* by this court. *See Morris v. Rice*, 985 F.2d 143 (4th Cir.1993). The defendant is on shakier ground, however, when it asserts as the sole reason the plaintiffs fail to make out a *prima facie* case is because the U.S.P.S. did not know that the Prudencios are of Asian ancestry and, thus, within a Title VII protected class. Of course, while knowledge of a job applicant's race by an employer is a prerequisite for intentional discrimination, *see Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir.1987) ("An employer cannot intentionally discriminate against a job applicant based on race unless the employer knows the applicant's race."), the necessary knowledge (or constructive knowledge) is present here. As an initial matter, the Prudencios' father, possessing the same surname, has been employed by the Post

---

2. As the United States Supreme Court has stated of the presumption of discrimination, "[W]e presume [an employer's] acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors." *Furnco Constr. Co. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

3. The Prudencios' Complaint at ¶¶ 5, 9, 12, 15–19 alleges the four necessary elements under *McDonnell Douglas*.

Office in Charlottesville for over fifteen years. Additionally, the U.S.P.S. acquired actual notice of the Prudencios' national origin when the plaintiffs personally appeared before postal employees to take the employment test in 1989 and again in 1993 to request copies of the "Individual Applicant Ranking Report."[4]

Because burden of establishing a *prima facie* case of discrimination is not an "onerous" one, *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093, and because the USPS had either actual or constructive notice of the plaintiffs' protected national origin status, defendant's motion to dismiss or for summary judgment shall be denied. The Prudencios make out a classic *prima facie* case of employment discrimination under the *McDonnell Douglas* paradigm.

### B. The "Legitimate, Nondiscriminatory Reason"

■ Again, when a Title VII plaintiff establishes a *prima facie* case of unlawful discrimination, the burden of production shifts to the defendant-employer to produce evidence sufficient to rebut the presumption of discrimination. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The defendant-employer must "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Once a plaintiff has established a *prima facie* case of discrimination, "the employer must respond or lose." *Hicks,* 509 U.S. at 528, 113 S.Ct. at 2758 (Souter, J., dissenting on other grounds).

■ To establish a legitimate, nondiscriminatory reason, "... the defendant must clearly set forth, through the introduction of admissible evidence, the *reasons* for the plaintiff's rejection. The explanation must be legally sufficient to justify a judgment for

the defendant." *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 (emphasis added). That offered reason must "frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id.* at 255–56, 101 S.Ct. at 1094–95. While the defendant's burden " ... is only one of production and not persuasion, it is elementary that the evidence produced must be clear, reasonably specific, and legally sufficient...." *Tye v. Board of Education,* 811 F.2d 315, 318 (6th Cir.); *cert. denied,* 484 U.S. 924, 108 S.Ct. 285, 98 L.Ed.2d 246 (1987), *overruling on other grounds rec'd by Kline v. Tennessee Valley Authority,* 128 F.3d 337 (6th Cir.1997).

Federal Courts generally have held that in an employment discrimination action, as long as an employer's proffered "legitimate nondiscriminatory reason" is facially nondiscriminatory, regardless of its persuasive effect, the *prima facie* presumption in favor of the plaintiff's claim of discrimination drops from the case and the court proceeds to the ultimate question of fact for the fact finder, *to wit,* whether the employee has proven discrimination. *See Hicks,* 509 U.S. 502, 514, 113 S.Ct. 2742, 2750, 125 L.Ed.2d 407 (1993); *Considine v. Newspaper Agency Corp.,* 43 F.3d 1349, 1364 (10th Cir.1994) (citing *E.E.O.C. v. Flasher,* 986 F.2d 1312, 1316 (10th Cir.1992)).

■ Here, the Post Office's attempts to proffer two "legitimate nondiscriminatory reasons" that accounted for the omission of the Prudencios' names from the worksheet issued for the Charlottesville branch's vacancies. One such reason is that an administrative or computer error of some type in the Richmond office removed the Prudencios' names from the active list of applicants when the registry was automated; the Post Office headquarters in Richmond failed to forward the full list of qualified applicants to the

---

4. The U.S.P.S. in memoranda and objections offers much favorable statistical evidence concerning the respectable percentage of persons of Asian ancestry in its workforce. Of course, statistical evidence, while important in a disparate impact discrimination case, *see Griggs v. Duke Power,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), a class-wide intentional discrimination case, *see International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct.

1843, 52 L.Ed.2d 396 (1977), and an individual intentional discrimination case as to the issue of pretext, *see Grier v. Secretary of Navy of U.S.,* 677 F.Supp. 362 (E.D.Pa.1987) (citing *inter alia, Furnco Constr. Co. v. Waters,* 438 U.S. 567, 580, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978)), is immaterial in an individual intentional discrimination case with respect to the existence, *vel non,* of a legitimate, nondiscriminatory reason.

branch office in Charlottesville where the ultimate hiring decision was made. Thus, because the Richmond Post Office, for whatever reason, omitted the plaintiffs' names from the registry, the Charlottesville branch was operating on a legitimate, nondiscriminatory basis when it failed to hire the Prudencios.

The plaintiffs argue, and the court agrees, however, that in addition to the above reason's overly syllogistic logic[5], the U.S.P.S. cannot and does not *know* that an innocent error (administrative, computer, or otherwise) accounted for the plaintiffs' exclusion from the Charlottesville job candidates' list. Indeed, as the Post Office itself stated

> The Postal Service merely speculate[s] that the omission of the Plaintiffs' names from the hiring work sheets resulted from administrative or computer error. *What actually caused the apparent error is not known.*

Defendant's Response to Plaintiffs' First Set of Interrogatories at 1–2 (emphasis added).

The Report and Recommendation finds that this proffered reason, the U.S.P.S.'s total lack of knowledge why the plaintiffs' names were excluded from the job opening list, suffices under *McDonnell Douglas* and Fed.R.Civ.P. 56 to create triable issues of fact and credibility for a jury to sort out. The Report and Recommendation concludes that, because the U.S.P.S. has rebutted the presumption of discrimination with a legitimate, nondiscriminatory reason, the action should proceed to trial on the pretext issue and the ultimate issue of national origin discrimination. Accordingly, the Report and Recommendation recommends denying plaintiffs' motion for summary judgment.[6]

The Prudencios object to the Report and Recommendation on the basis that a defendant's protestations that it does not know the reason for the allegedly discriminatory failure to hire does not state a reason at all, much less a legitimate, nondiscriminatory one for the employment decision. Case authority on this issue supports the plaintiffs' objection.

In *Grier v. Secretary of Navy of U.S.*, 677 F.Supp. 362, 367 (.D.Pa.1987), a Title VII defendant offered as evidence in support of its decision not to, promote a black civilian employee mere testimony that "only 'highly qualified' individuals were selected [for promotion] and that [the plaintiff] was not found to be 'highly qualified' " The court held that this syllogistic explanation " ... is not the kind of evidence 'that would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.' " *Id.* (quoting *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1095).[7] The court entered judgment in favor of the plaintiff on his unrebutted *prima facie* showing of race discrimination, *Id.* In so doing, the court commented that:

> [it did] not doubt the good faith of the defendant in failing to come forward with evidence of [its] reasons for not promoting [the plaintiff]. Nonetheless, I cannot subscribe to a rule of law that would encourage employers to destroy or misplace personnel documents in order to obfuscate their reasons for making employment decisions.

*Id.*[8]

Similarly, in *Tye v. Board of Education*, 811 F.2d 315 (6th Cir.), *cert. denied*, 484 U.S.

---

**5.** The proffered reason leaves unanswered the question of why the defendant, the United States Postal Service, rather than a particular component branch of it, omitted the plaintiffs' names from the registry.

**6.** To quote the relevant passage in the Report and Recommendation, the United States Magistrate Judge states:
> ... the "I don't know what happened" [proffered reason] is very close [to not constituting a legitimate, nondiscriminatory reason] except that if we put it in the agency, governmental, bureaucratic agency context, this Court is not willing to set the policy to say it's insufficient as a matter of law.

Transcript at 48.

**7.** The court found the defendant's proffered legitimate, nondiscriminatory reason lacking because the defendant did not produce the "merit promotion package" it used to rank candidates for promotion. *Grier*, 677 F.Supp. at 367. Moreover, the defendant did not offer testimony of any witness with knowledge of the package's contents or of the reasons the plaintiff was not promoted. *Id.*

**8.** Without suggesting that the U.S.P.S. has intentionally destroyed or misplaced evidence that explains why the Prudencios' names were absent from the list of qualified candidates sent to the

924, 108 S.Ct. 285, 98 L.Ed.2d 246 (1987), overruling on other grounds rec'd by Kline v. Tennessee Valley Authority, 128 F.3d 337 (6th Cir.1997), a superintendent of schools eliminated a female guidance counselor's position by not renewing her contract. At trial, the superintendent testified that he had "no reasons" for not renewing the contract. Id. at 319 n. 2. The court held that the lack of any reasons offered to justify the allegedly discriminatory discharge was insufficient to meet the employer's McDonnell Douglas burden to produce a legitimate, nondiscriminatory reason. Id. at 319 (the court, in holding that other stipulated reasons for the non-renewal sufficed as legitimate reasons, stated "... if the stipulations had not been introduced and [the superintendent's] testimony alone had been used to meet the defendant's intermediate burden, [the plaintiff] would have been entitled to judgment on an unrebutted prima facie case.")

In this court's view, the U.S.P.S.'s concession that it does not know the reason for the exclusion of the plaintiffs from the employment candidates' list, is the logical and legal equivalent of proffering no reason for the omission. Because, as a matter of law, "no reason" cannot serve as a "legitimate, nondiscriminatory reason," the plaintiffs' prima facie showing of national origin discrimination remains unrebutted. Under the McDonnell Douglas framework, then the Prudencios are entitled to judgment as a matter of law.

### C. The State of the Law Post–Hicks

The defendant raises the final and critical question of the continuing vitality of the McDonnell Douglas presumption of discrimination. At the recent hearing on the instant motions, the Post Office argued vigorously

that St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) effectively overruled McDonnell Douglas with respect to the presumption of discrimination that arises after a Title VII plaintiff adduces evidence establishing his prima facie case.

The very language of Hicks, however, resoundingly answers the U.S.P.S.'s contention in the negative. Addressing this very charge by the Hicks dissent, the court stated, in implicit but not subtle reference to McDonnell Douglas, that:

> [o]nly one unfamiliar with our case law will be upset by the dissent's alarum that we are today setting aside "settled precedent," post, at 525[113 S.Ct. at 2756], "two decades of stable law in this Court," ibid., "a framework carefully crafted in precedents as old as 20 years...."

Id. at 512, 113 S.Ct. at 2749. Indeed, the Hicks court did not overrule McDonnell Douglas or even distinguish it broadly on the presumption issue.

■ Rather, Hicks held only that a trier of fact's rejection of a defendant-employer's asserted reason for its adverse employment action does not entitle a plaintiff to judgment as a matter of law. Id. at 511, 113 S.Ct. at 2748. Once a defendant has met the shifted burden of production and produced evidence of a legitimate, nondiscriminatory reason for its decision, "whatever its persuasive effect," id. the trier of fact then proceeds to the ultimate question of whether intentional discrimination, instead, explains the adverse employment action. Id. Hicks merely reversed the Court of Appeals' holding below that "rejection of the defendant's proffered reasons compels judgment for the plaintiff...." Id. (emphasis in original).[9]

Charlottesville branch, this court shares the Grier court's insistence that employer record-keeping be detailed. For twenty-five years all that the McDonnell Douglas presumption of discrimination has required of American businesses and governmental agencies is that they document their employment decisions so as to leave an adequate record of nondiscriminatory bases for such actions. The U.S.P.S. here failed to live up to that very minimal obligation—an obligation imposed both by law and by practical business necessity.

9. In reversing the Court of Appeals, the Hicks court nevertheless recognized the continuing applicability of the McDonnell Douglas rebuttable presumption in stating:

> We may, according to traditional practice, establish certain modes and orders of proof, including an initial rebuttable presumption ... which we believe McDonnell Douglas represents. But nothing in the law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much

*Hicks* clearly leaves unaltered a defendant-employer's burden actually to adduce a legitimate, nondiscriminatory reason for a contested employment action. In making analogies to a defendant's responsibilities to answer a complaint (else suffer default judgment) or to submit affidavits creating genuine issues of material fact (else suffer summary judgment), *Hicks* recognizes a Title VII duty to respond affirmatively and with a specific legitimate, nondiscriminatory reason which a factfinder could either believe or disbelieve. *See id.* at 507, 113 S.Ct. at 2747 (citing *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95).

Because, even after Hicks, "no reason" cannot be a "legitimate, nondiscriminatory reason," the Prudencios' *prima facie* case of discrimination remains unrebutted entitling them to judgment as a matter of law. The court, then, shall sustain plaintiffs' objections to the Report and Recommendation, deny defendant's objections to the same, and enter summary judgment in favor of the Prudencios on the issue of the Post Office's liability to them for national origin discrimination in violation of Title VII.

lesser) finding that the employer's explanation of its action was not believable.
*Hicks,* 509 U.S. at 514–15, 113 S.Ct. at 2750–51. Thus *Hicks* stands for the unremarkable proposition that Title VII plaintiff ultimately must prove discrimination to prevail.