Maritess C. PRUDENCIO and Robin
C. Prudencio, Plaintiffs,

v.

Marvin RUNYON, Postmaster General,
United States Postal Service,
Defendant.

Civil Action No. 97–0004–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

April 13, 1998.

Neal L. Walters, Gilliam, Scott & Kroner, P.C., Charlottesville, VA, for Plaintiffs.

Julie C. Dudley, U.S. Attorney's Office, Roanoke, VA, for Defendant.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

This Title VII "failure to hire" action concerns national origin discrimination. Because the court previously found that the plaintiffs had established a *prima facie* case of intentional discrimination and that the defendant had failed to rebut the presumption of discrimination by adducing any evidence of a "legitimate, nondiscriminatory reason" for the failure to hire,[1] the court granted the plaintiffs' September 15, 1997 Motion for Summary Judgment pursuant to *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny and Fed.R.Civ.P. 56. *Prudencio v. Runyon*, 986 F.Supp. 343 (W.D.Va.1997). By the same Order and Opinion, the court denied the defendant's September 11, 1997 Motion to Dismiss or, in the alternative, for Summary Judgment. *Id.*

The court, however, stayed the stayed the plaintiffs' motion for summary judgment with respect to the nature of any relief to be granted pending further briefing by the parties. *Id.* Now before the court are the plaintiffs' March 27, 1998 Memorandum in Support of their Motion for Summary Judgment on the Issue of Entitlement to Retroactive Seniority and Punitive Damages and the defendant's March 24, 1998 Memorandum in opposition to same. For the reasons stated herein, the court will grant, in part, and deny, in part, the plaintiffs' motion for summary judgment as to the relief that should follow the finding of intentional discrimination.

## I.

The court recited the facts of this case in its earlier Opinion. *Id.* at 345–46. Briefly restated, Maritess and Robin Prudencio ("Prudencio"), are brother and sister. Both are of Asian (specifically, Philippine) origin. In 1989, both took a United States Postal Service ("USPS," "Postal Service," or "Post Office") qualifying examination in an effort to secure employment with the Post Office. Both of the plaintiffs passed the test; Maritess Prudencio received a score of 98.80 out of a possible score of 100 and Robin Prudencio got a score of 94.00. Upon receipt of such passing scores, the plaintiffs were qualified in all respects to be considered for employment.

After the test, in May 1989, the Post Office apparently placed all job applicants names on a "register" in Richmond from which persons eligible for employment were drawn as and when positions became available at designated branches. Names were placed on the register in numerical order by the score each applicant received on the qualifying test. When a position opened up, a computer-generated list of names was produced in the order of the scores received on the test.

Between 1989 and November 1993, the Post Office never contacted the plaintiffs concerning their status for potential employment. Discovery in this litigation revealed that at least twice during this period, the

---

1. The court held that the U.S.P.S.'s statement that it did not know the reason why it failed to hire the otherwise-qualified plaintiffs does not state a reason for purposes of summary judgment, much less a legitimate, nondiscriminatory one for the employment decision. *Prudencio*, 986 F.Supp. at 350–51 (citing and distinguishing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

U.S.P.S. issued hiring worksheets for the Charlottesville branch of the Post Office when job positions became available there. On January 29, 1990, one such worksheet listed the fifty (50) highest ranking applicants. Maritess was listed at position "22;" Robin failed to make the list because the test score of the lowest ranking applicant was 95.80. On August 2, 1993, most importantly, a second such worksheet was issued for the Charlottesville branch. The list named the top forty (40) scorers on the test with a cut-off score of 90.30. Neither plaintiff's name was on the list. Persons with identical scores to Maritess and Robin Prudencio ranked "11" and "24," respectively.

In May 1993, the plaintiffs requested an "Individual Applicant Ranking Report" from the USPS which shows a job applicant's current ranking on the applicable register for certain jobs at identified post office branches. The Post Office issued the reports in November 1993. The reports indicated that both plaintiffs ranked anywhere from first to twenty-second for positions at the Charlottesville, Earlysville, and Ivy branches of the Post Office.

On May 27, 1994, the U.S.P.S. again issued a hiring worksheet for the Charlottesville branch. The list included the top sixty names for five available positions. Although the first listed person's score was 93.30 and the last fisted person's score was 83.80, neither plaintiff's name appeared on the list. Of the four persons hired from the worksheet's list of names, all had lower test scores than the plaintiffs; three of the persons hired were white, one was black and none was Asian.

## II.

### A. Retroactive Seniority

 Plaintiffs who prevail in an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, are entitled to a full range of relief; they are entitled to be "made whole" for injuries suffered by unlawful employment discrimination. *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 763, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). Successful plaintiffs in a discriminatory failure to hire case are entitled to instatement in the next available position, back pay, and seniority benefits. *E.E.O.C. v. Safeway Stores, Inc.*, 634 F.2d 1273 (10th Cir.1980), *cert. denied* 451 U.S. 986, 101 S.Ct. 2321, 68 L.Ed.2d 844 (1981). Because successful plaintiffs in such a case have been denied seniority-based eligibility for benefits during the time employment was denied them, retroactive seniority ordinarily is "... necessary to achieve the 'make whole' purposes of the Act [ (Title VII) ]." *Franks, supra,* 424 U.S. at 766 and 779 n. 41, 96 S.Ct. 1251; *accord, International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 362, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) and *Davis v. Richmond, Fredericksburg & Potomac R.R. Co.,* 803 F.2d 1322, 1328 (4th Cir. 1986).

 Retroactive seniority only may be denied if the opposing party demonstrates that such relief would cause an "unusual adverse impact" that would not "generally be found in Title VII cases." *Franks,* 424 U.S. at 779, 96 S.Ct. 1251; *accord, Sangster v. United Air Lines, Inc.,* 438 F.Supp. 1221 (N.D.Cal.1977), *aff'd* 633 F.2d 864 (9th Cir. 1980), *cert. denied* 451 U.S. 971, 101 S.Ct. 2048, 68 L.Ed.2d 350 (1981). Retroactive seniority may not be denied merely because of the "abstract basis of adverse impact upon interests of other employees." *Franks, supra,* 424 U.S. at 779, 96 S.Ct. 1251; *accord, Alaniz v. California Processors, Inc.,* 73 F.R.D. 289 (N.D.Cal.1976), *aff'd* 572 F.2d 657 (9th Cir.), *cert. denied* 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978). The decision whether to award retroactive seniority rests in the trial court's sound equitable discretion, as referenced in 42 U.S.C. § 2000e–5(g)(1).[2] *Sangster, supra,* 438 F.Supp. 1221.

---

**2.** The statute reads, in pertinent part:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate....

In the present case, the Postal Service does not oppose an award to the Prudencios of retroactive seniority. Def's Mem. at 1. Rather, the defendant only asks the court "... to determine the appropriate date of employment for the plaintiffs." *Id.* The defendant states in support of its position that:

> Based on the Court's November 25, 1997 Order, Maritess and Robin Prudencio would have been hired by the Postal Service on August 2, 1993, if they satisfied the Postal Service's pre-hire requirements. However, if the Postal Service, through a settlement, agrees that August 2, 1993, is the effective date of the plaintiffs' employment, it will have voluntarily placed itself in the impossible position of trying to honor both a settlement agreement and inconsistent provisions of collective bargaining agreements....

*Id.* at 2. Under the U.S.P.S.'s collective bargaining agreements with the American Postal Workers Union ("APWU") and the National Association of Letter Carriers ("NALC"), seniority for postal employees begins on the date of entry into the relevant position. Def's Mot. at 2 (citing Article 37.2.D(1) of APWU collective bargaining agreement and Article 41.1.C.2(A)(1) of NALC agreement).

While an employer is itself bound by the seniority provisions of its collective bargaining agreement, a court, of course, can order retroactive seniority as a remedy for a Title VII violation without being hamstrung by any such agreement. *Southbridge Plastics Division v. Local 759, International Union of the United Rubber, Cork, Linoleum and Plastic Workers of America*, 565 F.2d 913 (5th Cir.1978). Moreover, after a court's finding of illegal discrimination, *"Franks* made clear ... that retroactive seniority may be awarded as relief from an employer's discriminatory hiring ... policies even if the seniority system makes no provision for such relief." *International Brotherhood of Teamsters, Inc.*, 431 U.S. at 347, 97 S.Ct. 1843.

In the matter at bar, the court will award the Prudencios retroactive seniority from their effective date of employment of August 2, 1993. On that date, as mentioned above, the U.S.P.S. issued a hiring worksheet, drawn from the letter carrier applicant registry, for the Charlottesville branch office of the Post Office. The list included the names of the highest forty (40) scores of the applicant's test for twelve (12) then-available vacancies. Neither Maritess nor Robin Prudencio's name was included on the list in spite of the fact that, from their test scores, they should have been, considering that the scores of the persons listed were at least 90.30. Accordingly, the court hereby determines that the plaintiffs' relevant seniority date is August 2, 1993.

### B. Punitive Damages

Before 1991, punitive damages were not available to plaintiffs in Title VII actions. In the Civil Rights Act of 1991, however, Congress enacted 42 U.S.C. § 1981A, which, for the first time, authorized the award of punitive damages in the Title VII context. Even so, punitive damages may not be awarded against a "government, government agency or political subdivision." [3]

The Federal courts presently are divided on the question of whether the U.S. Postal Service is a "government agency," and, thereby, exempt from § 1981A(b)'s punitive damages provision. *Compare, Baker v. Runyon*, 114 F.3d 668 (7th Cir.1997) (Post Office

---

42 U.S.C. § 2000e–5(g)(1) (West 1994).

**3.** The relevant portion of the statute reads:
 (a) Right of recovery.
 (1) Civil rights. In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C.2000e–5) against a respondent who engaged in unlawful intentional discrimination ... prohibited under section 703, 704, or 717 of the Act (42 U.S.C.2000e–2 or 2000e–3) ..., the complaining party may recover compensatory and punitive damages allowed in subsection (b)....

 (b) Compensatory and punitive damages.
 (1) Determination of punitive damages. A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.
42 U.S.C. § 1981A (West 1994 & Supp.1998).

is exempt as "government agency"); *Miller v. Runyon,* 932 F.Supp. 276 (M.D.Ala.1996) (same); *Jense v. Runyon,* 990 F.Supp. 1320, 1998 WL 21878 (D.Utah 1998) (same); *Cleveland v. Runyon,* 972 F.Supp. 1326 (D.Nev. 1997) (same); *Ausfeldt v. Runyon,* 950 F.Supp. 478 (N.D.N.Y.1997) (same); *Griffin v. Runyon,* 1997 WL 359972 (N.D.Ill.1997) (same); *Tuers v. Runyon,* 950 F.Supp. 284 (E.D.Cal.1996) (same); *Roy v. Runyon,* 954 F.Supp. 368 (D.Me.1997) (punitive damages may be recovered against U.S.P.S.). Clearly, though the courts may be somewhat split, the majority position on the question is that the Postal Service, as a government agency, falls under the exception to § 1981A(b)'s punitive damages framework.

The plaintiffs argue that a variety of factors indicate that, for purposes of punitive damages, the Post Office is not a "government agency." [4] First, the Prudencios argue that in waiving the U.S.P.S.'s sovereign immunity and granting it the power "to sue and be sued" in 39 U.S.C. § 401(1), Congress intended to subject it punitive damages awards, as if it were a run-of-the-mill private enterprise. [5] Second, plaintiffs contend that because, in extending Title VII's discrimination prohibitions to Federal government employment in the 1972 Civil Rights Amendments (*see,* 42 U.S.C. § 2000e–16(a)), [6] Congress referred to "executive agencies" and to the "United States Postal Service" separately, the legislative body understood the U.S.P.S. not to be a "government agency" when it passed

§ 1981A in 1991. It follows, plaintiffs conclude, that had Congress intended to exempt the Postal Service from punitive damages awards under the 1991 Civil Rights Amendment, "it would have mentioned it along with governmental agencies in the same fashion it did in § 2000e–16(a)." Pl's Mot. at 7.

The plaintiffs' latter contention derives not from a reading of Congressional intent, but from semantic sleight-of-hand. Taking up the semantic gauntlet thrown down by plaintiffs, the court notes that later in the same section of the 1972 amendments (42 U.S.C. § 2000e–16(e)), Congress used *one* term, "[g]overnment agency," to refer to *both* the "executive agency" and Postal Service employers to whom it was extending Title VII's reach. [7] The distinction, then, that plaintiffs attempt to draw between "government" and "executive" agencies is one without a difference; Congress intended no such distinction when it used the terms interchangeably in 1972. That said, the court turns to the plaintiffs' former argument that the U.S.P.S. is a quasi-private enterprise and, thus, not a "government agency" exempted from punitive damages under § 1981A(b).

The Seventh Circuit addressed this very question, at length, in *Baker v. Runyon,* 114 F.3d 668 (7th Cir.1997). Recognizing that the U.S.P.S. possesses a significant degree managerial autonomy, the court nonetheless held that Congress, in passing the 1970 Postal Reorganization Act, never intended to pri-

---

**4.** The plaintiffs apparently do not dispute and do not attempt to distinguish the fact that in other contexts, the Postal Service is considered a Federal government agency. *See, e.g., United States v. Estus,* 544 F.2d 934 (8th Cir.1976) (holding that 18 U.S.C. § 1001's criminal prohibition against any individual within the jurisdiction of any department or agency of the United States from making fraudulent statements applies to false statements made by Postal Service employees).

**5.** The plaintiffs cite *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) for the proposition that, in passing the Postal Reorganization Act of 1970, of which 39 U.S.C. § 401(1) is a part, Congress intended that the Postal Service "be run more like a business than its predecessor, the Post Office Department." *Loeffler,* 486 U.S. at 556, 108 S.Ct. 1965 (quoted in Pls' Mot. at 5).

**6.** The statute reads, in pertinent part:

All personnel actions affecting employees or applicants for employment ... in military departments ..., in executive agencies ..., in the United States Postal Service ... shall be made free from any discrimination based on race, color, religion, sex, or national origin.
42 U.S.C. § 2000e–16(a) (West 1994 & Supp. 1998).

**7.** "Nothing contained in this Act shall relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes or of its or his responsibilities under Executive Order 11478 relating to equal employment opportunity in the Federal Government." 42 U.S.C. § 2000e–16(e) (West 1994 & Supp. 1998).

vatize the Postal Service fully. As the court stated:

The Postal Service may be run in a manner similar to a private commercial entity, but it is not a private commercial entity. *See ... Friedlander v. United States Postal Service,* 658 F.Supp. 95, 101 (D.D.C. 1987) ("Congress did not intend to create a private business, rather, it desired a more efficient government agency.").... Congress may have vested the Postal Service with significant powers in order to increase its independence and autonomy, *see Standard Oil [Div., Am. Oil Co. v. Starks ],* 528 F.2d [201] at 202–03 (listing powers granted to the Postal Service), but it also provided that the Postal Service is part of the executive branch of government, that its employees are part of the federal civil service, and that it possesses certain powers unique to governmental entities, such as the authority to exercise the power of eminent domain in the name of the United States.

*Baker,* 114 F.3d at 670–71 (citing 39 U.S.C. §§ 201, 1001(b) & 401(9)). The court added that when Congress intends to privatize completely an organization it establishes, it clearly says as much in the body of the enabling statute. Congress made such clear expressions of its intent with respect to the Corporation for Public Broadcasting ("PBS") and Amtrack. *Id.* at 671 (citing and quoting 47 U.S.C. § 396(b) (PBS "will not be an agency or establishment of the United States Government"); 45 U.S.C. § 541 (Amtrack "will not be an agency or establishment of the Untied States Government") (repealed)).

As well, the court directly addressed the Prudencios' contention that Congress' waiver of the Postal Service's sovereign immunity in the "sue-and-be-sued" clause of 39 U.S.C. § 401(1) subjects the defendant to punitive damages. Holding to the contrary, the court stated:

As is true of many other federal agencies, the Postal Service's charter contains a "sue-and-be-sued" clause that permits the Postal Service to be sued. The presence of this clause, however, does little to advance [plaintiff's] argument. If anything, it supports the position of the Postmaster

General. *This waiver of sovereign immunity is necessary solely because the Postal Service is a government agency.*

*Id.* (citation omitted) (emphasis added). Self-evidently, were the Postal Service truly a private entity, the waiver of sovereign immunity would have been needless.

Accordingly, based on the sound reasoning of the *Baker* court and its thorough reading of the various Federal statutes concerning the Postal Service, this court holds that the U.S.P.S. is a "government agency." As such, under 42 U.S.C. § 1981A(b), it is shielded from exposure to punitive damages as a matter of law in Title VII cases.

### III.

For the foregoing reasons, the court will grant, in part, and deny, in part, the Prudencios' motion for summary judgment as to the relief available for the Postal Service's act of intentional discrimination against them. An appropriate Order this day shall issue.